Case number 18-6177, MarketGraphics Research Group versus David Berge. Argument not to exceed 15 minutes per side. Mr. Krug, you may proceed for the appellant. Good morning, Your Honors. Paul Krug here on behalf of the Plaintiff and Appellant, MarketGraphics Research Group, Inc., or MarketGraphics. I would like to reserve three minutes for rebuttal. In this case, the Bankruptcy Court should have entered summary judgment on behalf of MarketGraphics on its non-dischargeability complaint under 11 U.S.C. 523-A-6 as a result of the issue-preclusive effect of its underlying district court judgment against the defendant. Instead, the Bankruptcy Court dismissed MarketGraphics' complaint and dismissed its largest and most non-dischargeability because it misinterpreted the Tennessee Consumer Protection Act in a way that deviated from that act's plain text, disregarded its structure, and underlying principles of Tennessee tort law. The Tennessee Consumer Protection Act, or TCPA as we tend to call it, imposes liability on defendants who cause ascertainable losses of money or property through the use or employment of a long list of specified unfair or deceptive acts or practices. And it has two tiers of liability. Your plain, vanilla violation of the TCPA exposes a defendant to actual damages, that ascertainable loss, plus attorney's fees. But if you show a willful or knowing violation of the act, then the defendant becomes liable for treble damages. Those are discretionary, but it's what you get if you show, what you can get if you show, if you show, and only if you show a willful or knowing violation. In this case, MarketGraphics obtained a judgment of treble damages in the district court, and the district court found expressly a willful or knowing violation. I'm curious about the damages, the treble damages in this district court judgment, which as I understand it is document 64, filed on August 22nd, 2013. And there's a statement, treble damages under the TCPA, $144,000. Is that the amount above and beyond the non-treble damages of $72,328 that's listed there? Correct, Your Honor. So the sum total, the compensatory damages of $72,000 is the initial TCPA violation, and the trebling effect is labeled treble damages of $144,000, which happens to be exactly twice the other one. Correct, Your Honor. And the way Tennessee courts tend to apply that is you take the, it's really your initial damages plus times two, so not actual, then three on top, three overall. Right. I was very confused about this, and I'm very happy to get this. So in terms of the damages then, in this judgment, that is what we're concerned about, the initial line of $108,000 is for the copyright claim, then the next two are for the TCPA claim, because it's the $72,000 other compensatory damages plus the trebling. Correct, Your Honor. And are there any damages for the common law violations? As we argued in the brief, Your Honor, the common law damages were the same as the actual damages under the TCPA. And if you look at what's trial exhibit 16, our local rule 7.01 motion that was filed in the district court, it lays that out more clearly and has the common law claims and the actual TCPA damages all listed separately, and we just consolidated them when I drew the judgment to save room. And so that's why it says other damages on the judgment form, because those are duplicate. They were the same damages. Okay, so when you say you drew, you were the one who prepared this document that now is called judgment by the district court? Yes, Your Honor. I prepared that, tended it to the court, and Judge Chargas signed it. Okay, so where in this document is there a finding by the district judge that the common law charges, the three common law violations actually were found by the district judge to have been committed? There's not an express articulation of that specific finding, Your Honor, but it's implicit in paragraphs Roman numerals two through six and Arabic numerals eight and nine, which refer to the defendants engaging in an unfair competition conspiracy with and participating in the breach of the non-compete with the stayed defendant. I think it's also implicit in the fact that because the district judge certified that judgment document is final and the case remains stayed as to other defendants, and those claims, the common law claims were active, they had to be decided. You're relying on a lot of implicit stuff here. There isn't, in terms of, I think you began talking about issue preclusive effect, and that's why I'm concerned about whether there is actual findings on the part of the district court that could be given issue preclusive effect, or whether we're having to read in a lot of things here. I can say two things about that, Your Honor, maybe three things. First that if the court were to find that the common law claims had been decided, then the predicate factual findings necessary for that ruling, they all come along even if the district court didn't spell them out specifically, in sort of a general verdict type analysis. Second, the common law claims are not strictly necessary to the end decision here, because the damages are duplicated, duplicative of the TCPA damages. If the TCPA judgment is non-dischargeable, then we get everything in terms of debt collection that we would get on the common law claims. We don't really need to decide the common law claims, because what you want, you want to have a statement that the $332,000 bottom line is not dischargeable in bankruptcy. Correct, Your Honor. You would only need to reach the common law question if you disagreed with our argument about the TCPA. Okay, so getting to one concern that I have, and I realize I'm getting you completely out of your argument schedule, but I thought that the bankruptcy judge decided that the debtor's actions were not malicious, and therefore if we take a two-stage test under Geiger and non-dischargeable requires willful and malicious. If the bankruptcy judge has found that it's not malicious, don't you lose? I don't believe so, Your Honor, for two reasons. One, I think we should have won at the outset before trial, because we should get an implication of malice from our district court judgment. Two, after trial, the bankruptcy court, I don't think, applied the correct test for maliciousness. At the initial pretrial stage, the bankruptcy court applied the Wheeler test and said, well, the district court didn't say malice, and so I'm not going to find malice. But at the trial stage, after the trial, the bankruptcy court said, well, I don't find that he really intended to hurt you, and so that's not malicious, which isn't what Wheeler says. Wheeler says absence of excuse or good cause, and we've cited a long list of cases to say that the causes he put forth, I didn't know it was unlawful, and I did it to help my dad, that those aren't legally cognizable justifications that would excuse his conduct and that we willfulness carries over. Because the bankruptcy judge didn't appear to be applying the correct test for malice, I think we win even if we go back to . . . But how can you win if we agree with you that the district judge was misinformed about the right test for malice? Don't we have to remand it to the . . . I said district, but I mean bankruptcy judge. If the bankruptcy judge was misinformed about the right test for malice, and we think there's a two-part test, and that you have to show that it's both willful and malicious in order for you to win, shouldn't we remand it for the bankruptcy court to apply the correct test of malice because she's the one who heard the evidence? I think under the circumstances of this case, Your Honor, it would be much easier for the court simply to say as a matter of law that the excuses or justifications that were proffered by the defendant are inadequate as a matter of law. All this assumes you're correct about the willful part of the test, too, and so what is it about the initial district court judgment that proves willfulness under the federal standard? Right. Under the TCPA, going back to that test specifically, the TCPA plain text says that if the act or practice was a willful or knowing violation of this part, that is of the act, then you get the triple damages, which is what we had, and so here willful or knowing modifies violation. It doesn't modify act. It's not a willful or knowing act. It's a willful or knowing violation, and so the violation of the TCPA actually is a standard that entails injury. It has an injury component embedded in it because you have to have caused that ascertainable loss. But why does the or knowing? Couldn't it be that part of the TCPA that was found? It could have been, Your Honor, but the knowing is statutorily defined in that act as actual knowledge, and this court has previously held in the Kennedy case that an actual false statement that's harmful satisfies 523A6, so... Doesn't knowing also allow basically a recklessness standard? One way of knowing is you know exactly what you're doing, and another way is that you sort of adopt a reasonable person test and say a reasonable person in this instance should have known what they were doing, which is closer to recklessness if you don't have evidence of the actual... But I don't think that's what the statute says there, Your Honor. The statute says that knowing or knowledge means actual knowledge of the unfairness or deception of the act. And then it says, but actual awareness may be informed where... But, I mean, that's... No, I'm reading... I mean, I'm reading the rest. You're reading part of the statute. I'm reading the rest of it, so the statute does say what I'm saying. The statute certainly does say what you're saying, Your Honor, and what that is, that's an evidentiary standard. It doesn't say knowledge means actual or inferred knowledge. It could be neither one. It says... Go ahead. I apologize, but it says that the one is evidence of the other, and that's what we let juries do all the time. We let juries... The problem here is we just don't know which one it is from the original district court judgment. I mean, that seems like the whole hang-up here. There's lots of things that could have been when the district judge originally found against the party on the TCPA, but we really don't know how or why, what the grounds were. Well, you could look at... My time is up, Your Honor. May I answer the question? Please. Mm-hmm. I would say two things. One... Again, maybe three things. One, you can look at the record in the underlying case and look at the letters that were sent. Two, which are explicit attempts to solicit business away from the plaintiff. Two, you have the fact that courts widely, including this court's court, Your Honor, Judge Moore, in your Mnuchin opinion, have read that as an intentional standard. And three, there's the fact that I think if the state legislature had intended that to be a constructive knowledge standard, and not merely making express the ordinary law of evidence that you can find actual knowledge from the circumstances, if they'd intended to be a constructive knowledge standard, they'd have said that. Because you can have such a thing. You can have constructive knowledge, and the statute doesn't say constructive knowledge. A reasonable person would have known. Isn't that... That allows you to find actual knowledge. Right. That seems to be more of a constructive knowledge standard to find actual knowledge. It would seem to me, Your Honor, that if it allowed you to find knowledge based just on... That if it meant the reading Your Honor is proposing, that it would have said actual knowledge or what a reasonable person would have known under the circumstances. Thank you. Good morning, Your Honors. My name is Steve Lefkovitz. May it please the Court, I'm representing the appellant, David Berge. I was on the way up here from Nashville. I noticed, I was thinking that back 24 years ago, I stepped in this very courtroom and argued Enright Burr's Act, which I lost, and which was one of the precursors of collateral estoppel, and it's now been around for a long time. So I feel like I'm the grandfather of collateral estoppel turning... It is now in the 21st century we're calling issue preclusion. To answer Judge Moore's question, why should we just not remand it back? We had a trial on this matter. And after the trial, it went to the district court. And the district court remanded it back for Judge Harrison to consider whether the defendant willed or desired or believed that the injury was substantially certain to occur and the result biased behavior. She found it didn't. So the fact that we remand this back to the bankruptcy court, we've already done that. We've had a second bite of the apple with the remand, and it was not granted. Well, what if the bankruptcy court finds that your client's action was not malicious and that means, therefore, that the debt is dischargeable? So that's all in your favor? That's correct, ma'am. But what if the bankruptcy judge is applying the wrong standard of law for what is malicious under 523A6? The bankruptcy court viewed, in her opinion, which was docket entry 138, she went through every element. She went through the TCPA and relying on the decision out of the Eastern District of Tennessee, in Ray Crownover, found that the TCPA does require finding that the debtor intended his actions to bring about the harm suffered. That's the definition. You're talking about document 138. That is the renewed motion for summary judgment based on collateral estoppel as opposed to maliciousness. Yeah, but maliciousness would be included inside of collateral estoppel. Was there any finding by virtue of the judgment that there was something that was malicious on the part of your client? No, ma'am, there was not. So they failed meeting both the Geiger and the Markowitz test because it's a two-pronged test. This court held in Markowitz, after Geiger was decided, that you must prove both that the actions were willful and malicious. Right. So I don't see that the document 138 is answering the basic question that I have, which is if your opponent is correct, that the bankruptcy judge was making an error in her understanding of what maliciousness requires, why we shouldn't remand it. Because she heard findings of facts in this matter and she specifically said in document 103, if I'm not mistaken, or 109, I'm sorry, the debtor found the debtor to be critical and agreed that the debtor did not intend to injure the plaintiff. And you think that is the test for maliciousness? Under the standards set by this court in Markowitz, yes. So you would say then that the bankruptcy court was correct in her finding that your client was not malicious? That is correct. That's a finding of fact, that he did not have the consequences. And this test that would have to be was whether or not the debtor intended the harm. This went up and the district court and the bankruptcy court both asked that the bankruptcy judge review this. And the bankruptcy court did review this and made a finding that Mr. Berge was not malicious. And that, so both under the TCPA and under the copyright infringement, plaintiff's complaint fails if this is strictly the fact that they did not meet the two-prong test that Markowitz requires. And as a result of that, we must affirm that this discharge of debt must be granted. Your Honor, as to the common law claims, they are not mentioned in the order. They are clearly not necessary to the district court making its findings that it did. If they were necessary, they would have been drawn out in the order. So we can't infer for dischargeability purposes and for the purposes of this order that the common law claims were even important. They weren't even mentioned in the order. We don't know if the district court would have signed the order with those claims in there. This is summary judgment. This is not a default judgment. This was an order prepared by the plaintiff. They submitted it. They chose the wordings that were submitted to the court. The court signed their order.  becoming bankrupt when they did the order, which is having to do with the various substantive claims. Obviously, Your Honor. But as Judge Tharpin from this court, with one of the most classic preambles I've ever heard in Jackson-Masering, deadlines matter. I just thought that was just a classic preamble that the Supreme Court just granted certiorari on. I think we should start off this opinion saying, drafting matters. It's important. If they're claiming this for dischargeability purposes and they're claiming this for issue preclusion and they're saying this, it needs to be addressed in the order. We can't just infer all of these things that the plaintiff wants us to infer. One thing I was curious about, in Document 109, which is the bankruptcy judge's memorandum opinion concluding that your client was not acting with malice, the bankruptcy judge says on page three, the debtor having conceded all other elements of 11 U.S.C. 523-A6, the only issue at trial was whether the debtor acted with malice. Is that correct? That is correct, Your Honor. The debtor conceded all other elements of 523-A6. Yes, ma'am. It's a two-pronged test, willful and malicious. Our position is that the district court made a finding of willful. We are not arguing that that was not an express finding made by the district court. We are, but Markowitz, for its very reason, and Geiger also, requires this, that you have willfulness and malicious. That is the test. If you're willful, I'm willful, fine. I'm not malicious. That is the position that the bankruptcy court had to find, malicious. That is what 523-A6 is all about. Your position is we do not need to decide whether willfulness under the TCPA is the same as willfulness under the bankruptcy discharge provision because you've conceded willfulness. That is correct, Your Honor. I've conceded willfulness. I have not conceded maliciousness. You haven't conceded willfulness. You're not conceding to the standard. I'm not conceding the standard. I'm saying that they're different. I'm just saying that the district court utilized the term willful in its opinion or its order. And that is preclusive. Yes. I think it is preclusive, Your Honor. I mean, I know that harms my position, but I think out of fairness, we went down this road saying our position is that it's a two-pronged test. And I have to hit, and for the plaintiff to get done dischargeability, you've got to hit both. If the willfulness found by the district court is different than the willfulness required under federal law under the bankruptcy code because the words are different, the standards are different, then we also would, we could decide the case on that point and not reach the malice issue, is my understanding. You could. I think it would be, I think, but I think Markowitz is just so absolute that you have to find malice and that you can't infer malice from willfulness that plaintiff's complaint fails on just that. You don't even need to get to that point. And you, and according to the bankruptcy judge on page three of its document 109, you did concede all other elements of 523A6. That is correct. For that, and that was the same argument I made in front of the bankruptcy judge that you can find willful, but you have to find malicious. So why is malicious, is malicious a harder standard to meet than willfulness under 523A6? I think so. I think it's, I think it is, and I think that's something that this court can address through this case, is what is the standard for malicious? It was not addressed in Markowitz. It was not addressed in Geiger. It was said that you had to intend the, that you had to intend the harm, which is what the district court sent back to the bankruptcy judge. But it is a higher test. It's actually a higher burden. And you have to, so you had Mr. Prug draw on his order, said the debtor was willful and intended, and the district court intended this harm to happen. And as you said, Judge Moore, no, he wasn't thinking about bankruptcy when he was drafting this order. He took a $336,000 judgment against a person. He's got to consider bankruptcy. That has got to be, that's got to be weighing in the back of his mind if the person doesn't have insurance, they've led a default, they've not responded, they, you've got to think in the back of your mind somewhere that bankruptcy is somewhere in the offing. When, did that judge also enter a permanent injunction? Yes. And were the common law claims relevant to the relief granted through the permanent injunction? I don't think so. Why not? Because the permanent injunction doesn't have anything to do with dischargeability. The permanent injunction issued by the district court. Does it? In terms of the district court granting that sort of relief, was it relying on its resolution of the common law claims to grant a permanent injunction? We don't know, Your Honor. We just don't know. It just says a permanent injunction is granted. It could have been relying on the copyright infringement. It could have been relying on whatever. We simply don't know. So, for me to say the district court was relying on it, all we have in front of ourselves is the bare record. All we have, we don't have the court under Rule 52 making findings and conclusions after an evidentiary hearing. We have summary judgment that unfortunately this defendant did not respond to. And I was not involved in the case at that time. And, and they, they, they did not respond. They entered an order. The order is the record. So, we don't know what the district court relied on or didn't rely on. They signed an order based on failure to respond on the local rules to a motion for summary judgment. So, I wish I could tell you, yes sir, the district court relied on the common law claims. I don't know. They could have been relying on, on the, on the copyright infringement. They could have been relying on the allegations under the TCPA. I don't know. What I do know is that nowhere do those, is there any finding of the common law claims and now they're standing up there and saying, okay, we're going to throw a rebound and that's non, that's our basis for non-dischargeability when I don't know anything. I think you have, I think the court has to make some affirmative findings. And if you don't make the affirmative finding, you cannot come in and say, In the judgment. I mean, in the judgment and make, Well, I know, but you didn't say, but that's what you mean. The findings must be In the judgment. Journalized. Yes, ma'am. And that's why I say drafting matters. It really does. I've got a minute and a half left. Unless the court has any more questions, I would conclude at this time. Thank you. Your Honor, I'd like to pick up where Judge Riedler's last question left off. And the answer to that question is that the permanent injunction entered by the district court emphatically relates in large part   And we've Can you point us to where? I certainly can, Your Honor. If we look at the common law claims that we've heard, there are When we look at Arabic numeral pages Roman numeral paragraphs 8 and 9 those enjoin the defendant from acting in privity with the contracting state defendant in unfair competition. And that's not relief that we could have gotten under the Copyright Act. And it's not relief, frankly, we could have gotten under the TCPA. Those relate specifically to our claims that the defendant was engaged in this unfair competition in violation of the other defendant's non-compete agreement. And we had one of our claims for damages that's spelled out in the local rule 7.01 motion is was that claim for unfair competition. And there were cases that said that assisting breach of a non-compete is unfair competition for which you can recover damages. And they're not, I'm looking at 8 and 9 and I'm wondering could they be related to the TCPA violation or the copyright violation and why could they not be because they're in concert or privity or is there some  reason? Because the basis on which the basis for the TCPA claim, Your Honor, was the sending of certain letters and emails. And that's spelled out in the statement of facts, trial exhibit 14 that was filed with the motion of summary  And the case is very clear, Your Honor, the court should look at the whole underlying record when determining the scope of a judgment. That it's not just what's on the face of the judgment itself. We've cited just in the first case, where the circuit said, one of the parties claims that the judgment only establishes what's on its face. That is not the law. The judgment establishes what the underlying record shows it establishes. In terms of this case, there's nothing but malice. But what I mean by that is I really mean willfulness. Because this court's malice jurisprudence flows from that Wheeler case and means just cause or excuse. Whereas the Markowitz lays out the intentional tort standard for willfulness. And so there's this disconnect between what's being said and what's being ... Well, do you think the test for malice is what the Enray Trost case says very briefly that a malicious injury occurs in conscious judgment?  think the issue is that we have this law of the case from the district court prior appeal where the district court judge Crenshaw basically said there is no independent malice standard. But we are the reviewing court. So judge Crenshaw could have been wrong. I think judge Crenshaw was wrong as an academic matter, your honor. The issue is whether or not as a matter of the law of the case, how this case is disposed of between these parties. Right. But judge Harrison said this was malicious. She applied her test. Aren't we reviewing that in essence now? Whether judge Crenshaw was wrong in saying there is a unitary test. I was on trust but I didn't write it. It is a 2018 case and it says what willful injury is and what malicious injury is. Let's assume that we get back to the question I started with. Either we think judge Harrison applied the wrong test or she applied the right test. If she applied the right test then the debtor wins. I think if she applied the right test I lose and if she applied the wrong test I win. There is that. Thank you so much. Thank you both for your argument. The case will be